**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**Thomas M. KELLY, Jr., Respondent.**

**No. 84–1185.**

Supreme Court of Iowa.

Nov. 14, 1984.

Frank A. Comito, Jr., Des Moines, for complainant.

Thomas M. Kelly, Jr., Davenport, pro se.

UHLENHOPP, Justice.

In this proceeding we review the findings and recommendation of the Grievance Commission in an attorney disciplinary proceeding.

I. Complainant Committee on Professional Ethics and Conduct of The Iowa State Bar Association preferred charges against respondent Thomas J. Kelly, Jr., growing out of two series of incidents. The burden is on complainant to prove its charges by a convincing preponderance of the evidence. *Committee of Professional Ethics and Conduct v. Kraschel*, 260 Iowa 187, 194, 148 N.W.2d 621, 625 (1967). Complainant established the following facts.

A. Kelly practices law in Davenport, Iowa. He has a high-volume, low-fee type of practice, akin to a legal aid operation. He does not turn away clients for inability to pay; he provides legal assistance to many on the lower rungs of the economic ladder. He is industrious, and for many years worked long hours. In the period now in question he was in partnership with Attorney Doren M. Shifley, with an equal division of net income. Each of the partners had his own clients and files.

In the past, at least, Kelly was poorly organized in his practice and his business affairs. This was perhaps the main cause of some of the previous ethical infractions he committed. On one occasion we were required to admonish him for failing to prosecute a criminal appeal he was handling. On another occasion he was publicly reprimanded for delinquencies in handling probate matters. In 1976 he was convicted of the crimes of failing to file income tax returns for six years from 1969 through 1974. At that time we suspended his law license for a year. *Committee on Ethics and Conduct of the Iowa State Bar Ass'n v. Kelly*, 250 N.W.2d 388 (Iowa 1976). His present ethical problems stem from incidents arising in his representation of one Carl B. Heimbeck. According to the record, Heimbeck had previously been incarcerated in the Mens Reformatory for statutory rape arising from another incident.

In May 1979, Heimbeck was convicted of armed robbery and sentenced to twenty-five years imprisonment. He was represented at trial by a different attorney. The trial record indicated possible error in the admission of evidence against Heimbeck.

Heimbeck appealed from that conviction. His bail on appeal was $25,000. His mother, a working woman, obtained $25,000 in cash from her savings and posted it with the clerk of district court. Heimbeck was released during appeal.

Heimbeck retained Kelly to handle the appeal and paid him a retainer of $350 which was also provided by Heimbeck's mother.

Kelly obtained a transcript of the criminal trial; it cost $150. He and Heimbeck looked at it and discussed it. Kelly also talked with the county attorney. On numerous occasions thereafter he assured

Heimbeck and Heimbeck's mother that he was taking care of the appeal and that they should not be concerned.

Actually, Kelly did practically nothing to prosecute the appeal. He did not earn a fee of any substance, certainly not more than the remainder of the retainer he had received. He did not research the questions involved or prepare the required documents in the appeal. In due course the clerk of this court gave Kelly the usual warning notice. Kelly did not respond, and, in accordance with the rule, the appeal was dismissed for want of prosecution. Heimbeck was therefore subject to arrest and incarceration under the original sentence.

What happened thereafter as a result of Kelly's inattention to the appeal can only be characterized as a travesty of justice. Kelly learned of the dismissal of the appeal but did not move to reinstate the appeal, proceed with the appeal, or even so much as inform Heimbeck and his mother that the appeal had been dismissed. He summed up his conduct in a remark in his testimony: "[I] started trying to figure out how in the hell I was going to get this dilemma worked out; and then I procrastinated."

Heimbeck was arrested in Illinois in connection with a different incident. The Illinois officers learned of the warrant for him in Iowa, he waived extradition to Iowa to protect his mother's bail money, and Iowa officers promptly placed him in the Men's Reformatory pursuant to the original sentence. He remained incarcerated from December 31, 1980, until March 3, 1983, about two years and two months. His mother obtained a refund of her bail money except for $2500.

While he was incarcerated Heimbeck discharged Kelly and obtained another attorney. That attorney examined the criminal case, and initiated and prosecuted postconviction proceedings. On appeal in those proceedings, the Iowa Court of Appeals set aside the original conviction because of error in the admission of certain evidence at trial. In light of that decision, the Scott County Attorney did not prosecute the robbery charge further, for want of admissible evidence to convict. Heimbeck was released from the reformatory.

B. The second series of incidents relates to the bail money Heimbeck's mother posted. In the winter of 1979, while Heimbeck's criminal appeal was pending, Kelly had health problems, probably from overwork. He was hospitalized from December 19 to 22, 1979, for potassium deficiency, high blood pressure, and possible ischemic heart disease. He was placed on medication and was able to return to work, although on a considerably reduced scale during the early stages of convalescence.

The record does not disclose exactly what happened in the Shifley & Kelly law office in January 1980 regarding the bail money. Present in the office were Shifley, Kelly (part-time), at least one law clerk, one or two bookkeepers, secretaries, and a helper for miscellaneous chores. The firm had two bank accounts: a trust account and an office account. At the beginning of January the office account balance was down to $71.14.

Without the knowledge of Heimbeck or his mother and without any authority from them, someone in the law office prepared an application to the district court for reduction of Heimbeck's cash bail by $2500, purportedly but falsely to provide money for Heimbeck's appeal. Who instigated the application and who signed it, the record does not establish. Kelly's name appears as signatory, but he himself did not sign it. Shifley testified he did not sign Kelly's name. Someone presented the application to a district judge, with a form of order releasing $2500 of the bail money. The judge signed the order in ordinary course.

Shifley normally picked up checks at the clerk's office for the firm or its clients. He picked up the check for $2500, signed for it, and brought it to the law office. Someone then deposited it in the office bank account.

The next day Kelly and Shifley each received a "draw" of $500 from that account. The entries in the firm's book which lists

checks drawn contain these two draws; the listings are in Shifley's handwriting. The balance of the sum of $2500 was drawn from the office account in the ordinary course of the firm's business. Shifley denied any knowledge of the incident involving the bond reduction but acknowledged his signature on the receipt at the clerk's office for the check of $2500. The signature reads, "Thomas M. Kelly, Jr., by Doren Shifley."

Like the Grievance Commission, we proceed on the basis that the record does not establish respondent Kelly instigated or made the application for the bond reduction or obtained the court order. We hold, however, that the record warrants and indeed compels the inference that Kelly soon knew of the bail reduction and of the resulting deposit of $2500 in the office account. He also knew that neither he nor the firm had authority to take down this money from the cash bail. He did not disclose to Heimbecks that the bail had been reduced and that the law firm had received the money. Nor did he refund the money to the Heimbecks or offer to do so, or even so much as transfer $2500 to the trust account. Heimbeck's mother did not learn until later of the reduction in the posted bail, when bail was released in the appeal and the clerk returned only $22,500 to her.

C. Heimbeck and his mother asserted damage claims against Kelly. Subsequently the firm's malpractice insurer settled with them.

■ II. As to Kelly's failure to prosecute the criminal appeal—while misrepresenting to the Heimbecks that he was taking care of it—Kelly violated DR 1–102A(4) of the Iowa Code of Professional Responsibility for Lawyers ("A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."); EC 6–4 ("Having undertaken representation, a lawyer shall use proper care to safeguard the interest of his client.... In addition to being qualified to handle a particular matter, his obligation to his client requires him to prepare adequately for and give appropriate attention to his legal work."); DR

1–101(A)(3) ("A lawyer shall not ... [n]eglect a legal matter entrusted to him."); and DR 7–101(A)(3) ("A lawyer shall not intentionally ... [p]rejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B) [fraud perpetrated by client].").

In neglecting the appeal, Kelly grievously harmed Heimbeck. Presumably the evidence held inadmissible in the postconviction appeal would have been held inadmissible if Kelly had prosecuted the original criminal appeal, and Heimbeck would not have suffered incarceration at all.

As to Kelly's failure, when he learned of the bond reduction, to undo that transaction, to inform the Heimbecks immediately of the incident, and to restore $2500 to the clerk or Heimbeck's mother, Kelly violated EC 9–5 ("Separation of funds of a client from those of his lawyer not only serves to protect the client but also avoids even the appearance of impropriety, and therefore, commingling of such funds shall be avoided."); DR 9–102(A)(2) ("All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows: ... Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."); and DR 9–102(B)(1), (3), and (4) ("A lawyer shall: (1) Promptly notify a client of the receipt of his funds, securities, or other properties.... (3) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them. ... (4) Promptly pay or deliver to the client as requested by a client the funds,

securities or other properties in the possession of the lawyer which the client is entitled to receive.").

III. We come finally to the question of the appropriate discipline to impose. Kelly's prior record of an admonition, a reprimand, and a suspension for violation of the tax laws is to be considered on this question. *Committee on Ethics and Conduct v. Lawler,* 342 N.W.2d 486, 489 (Iowa 1984). His two present ethical infractions involve aggravated misconduct. The record in its entirety raises a question whether Kelly possesses the basic character which is essential in an attorney. *See Committee on Ethics and Conduct v. Crary,* 245 N.W.2d 298, 307 (Iowa 1976).

█ Kelly has no defense in this disciplinary proceeding based on the settlement by his malpractice insurer. This proceeding has to do with enforcement of legal ethics, the other involves monetary damages for tort.

Neither can Kelly take refuge in his prior health difficulties or workload. His proper course of action for those problems was to take on more help or less business, or to seek permission to withdraw from Heimbeck's appeal. Simply to neglect the appeal was not a permissible alternative. Nor did his health or work problems legitimize his failure to set aright the unauthorized bail reduction when he learned of it.

We hold that Kelly does not possess the character which is requisite in an attorney, and that the practice of law by him should be terminated.

LICENSE REVOKED.