COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

James A. JACKSON, Respondent.

Nos. 86–397, 86–688, 86–873.

Supreme Court of Iowa.

July 23, 1986.

James E. Gritzner of Nyemaster, Good, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

James A. Jackson, Des Moines, pro se.

WOLLE, Judge.

Between June 17, 1985 and February 19, 1986, the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) filed three separate complaints against respondent James A. Jackson. Separate panels of the Grievance Commission (commission) held hearings on the three complaints. The first panel recommended revocation of respondent's license to practice law in this state, while the other two panels each recommended that his license be suspended for six-month periods. Neither the respondent nor the committee has appealed or sought permission to appeal from the reports filed by the commission panels, and the reports are now before us for de novo review and final disposition pursuant to Iowa Supreme Court Rule 118.10. We revoke respondent's license to practice law.

In reviewing the record made before the commission panels, we are not bound by the commission's findings and recommendations but give them respectful consideration. *Committee on Professional Ethics and Conduct v. Blomker,* 379 N.W.2d 19, 20–21 (Iowa 1985); *Committee on Professional Ethics and Conduct v. Lawler,* 342 N.W.2d 486, 487 (Iowa 1984). We review the facts and address the issues presented in the three cases in the chronological order in which the three complaints were filed with the commission.

I. *Complaint Concerning Representation of Mumma.*

The committee on June 17, 1985 filed a complaint concerning respondent's representation of Tim R. Mumma in a civil

action which respondent was hired to defend commencing in March of 1979. The lawsuit concerned a fire loss to property rented by Mumma from the Charles W. Rogg Trust Estate. Division I of the committee's two-part complaint alleged that throughout his handling of that matter "respondent knowingly and willfully neglected and failed to diligently carry out his duties as attorney for Mr. Mumma." The complaint further specified that respondent had committed multiple breaches of the professional duties he owed to Mumma:

(a) Failure to perform minimum preparation for trial;

(b) Failure to advise Mumma of the trial date until just hours before the trial;

(c) Failure to perform minimum legal research and apply existing legal principles to the defense;

(d) Stipulating to high repair estimates when bona fide lower estimates had been obtained.

Those specific allegations were included in a detailed request for admissions which the committee served upon respondent. In spite of the seriousness of the charges, respondent failed to respond to the request, and we therefore deem those allegations admitted by respondent. *Blomker*, 379 N.W.2d at 21 ("Matters in a request for admissions may be relied upon to meet this evidentiary burden if not denied or otherwise objected to by respondent."); Iowa R.Civ.P. 127.

At his client's request respondent filed a notice of appeal from the judgment of $120,318.51 entered against Mumma in that court action. The committee's complaint further alleged, however, that respondent did little to prosecute the appeal. The commission found:

On January 16, 1981, Respondent paid the docket fee in the appeal; and on that date the appeal was docketed by the Clerk of the Supreme Court.

On April 17, 1981, the Clerk of the Supreme Court entered a Notice of Default ... for failure to timely prosecute the appeal pursuant to the Rules of Appellate Procedure.

On May 5, 1981, the Respondent made application for additional time in connection with the preparation of the Appendix; and, by Supreme Court Order of May 7, 1981 the Respondent was granted until May 21, 1981 in connection with preparation of the Appendix.

On June 24, 1981, a Notice of Default was entered by the Clerk of the Supreme Court due to the Respondent's failure to timely prosecute the appeal pursuant to the Rules of Appellate Procedure.

On July 13, 1981, the Respondent filed another Application for Additional Time in connection with the preparation of the Appendix; and by Order of July 15, 1981, the Court granted the extension of time to August 3, 1981.

On July 22, 1981, a Notice of Default was entered by the Clerk of the Supreme Court for the Respondent's failure to timely file the brief.

On August 31, 1981, Respondent filed another Application for Extension of Time in connection with the preparation of the Appendix; and by September 4, 1981 Order of the Supreme Court, an extension was granted to September 9, 1981.

On October 21, 1981, another Notice of Default was entered by the Clerk of the Supreme Court for failure to timely prosecute the appeal pursuant to the Rules of Appellate Procedure.

A convincing preponderance of the evidence in this record supports each of those findings.

The record also discloses that respondent advised Mumma all information pertinent to the appendix, critical to the appeal, had been submitted to the court, when in truth the appeal was in jeopardy because respondent had not done so. With that fabrication alone respondent violated DR 1-102(A)(4) of the Iowa Code of Professional Responsibility for Lawyers; that disciplinary rule forbids conduct involving dishonesty, fraud, deceit or misrepresentation.

Ultimately, respondent's inaction prompted Mumma to file a pro se motion to enlarge time. In that motion Mumma ad-

vised this court of his need for new counsel because of respondent's inaction. Mumma did employ new counsel, and the underlying action was settled.

Mumma thereafter commenced a separate malpractice action against respondent. When respondent failed to appear to defend against the allegation that he had damaged Mumma by negligently mishandling the Rogg Trust Estate civil action, Mumma obtained a default judgment against respondent in the sum of $40,000.

We believe the evidence establishes a conscious disregard and indifference to the responsibilities respondent should have shouldered once he undertook to represent his client. Indifference may constitute neglect, and it does here. *See Committee on Professional Ethics and Conduct v. Lawler*, 342 N.W.2d at 488 (neglect in failure to pursue postconviction proceedings after receiving retainer); *McKinney v. Wilson*, 300 N.W.2d 87, 89 (Iowa 1981) (per curiam) (neglect in repeated failure to observe deadlines imposed by Iowa rules of appellate procedure). Respondent's conduct violated DR 6–101(A)(3), which prohibits lawyers from neglecting matters entrusted to them.

Respondent's conduct violated two other disciplinary rules: DR 1–102(A)(6) (forbidding conduct adversely reflecting on an attorney's fitness to practice law); and DR 1–102(A)(5) (forbidding conduct prejudicial to the administration of justice).

There can be little doubt that respondent's inept handling of Mumma's case reflects adversely on his fitness to practice law. Respondent failed to perform even minimal preparation and work in connection with the civil trial and subsequent appeal. We have cautioned that "a lawyer's obligation to his client requires him to prepare adequately for and give appropriate attention to his legal work." *Committee on Professional Ethics and Conduct v. Martin*, 375 N.W.2d 235, 237 (Iowa 1985) (quoting *Committee on Professional Ethics and Conduct v. Rogers*, 313 N.W.2d 535, 536 (Iowa 1981)). Respondent did not heed that caution.

Respondent's neglect also had an adverse effect on the administration of justice, depriving his client of a fair trial of the civil action and forcing him to commence a separate malpractice action to recoup what he had lost. Respondent's conduct as Mumma's lawyer fell far short of the professionalism officers of the court owe to persons they represent and the public generally.

Respondent made no effort to excuse or justify his failings in attempting to serve as Mumma's lawyer. Respondent's conduct violated not only the disciplinary rules here discussed but also several other rules and ethical considerations: EC 6–1 (requiring competence and proper care in representing clients); EC 6–4 (requiring attorney to prepare adequately for and give appropriate attention to his legal work); DR 6–101(A)(2) (forbidding lawyer from handling a legal matter without adequate preparation); DR 7–101(A)(1) (lawyer shall not intentionally fail to seek lawful objectives of his client); DR 7–101(A)(2) (lawyer shall not intentionally fail to carry out employment contract entered into with client); and DR 7–101(A)(3) (lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship). The committee met its burden to prove by a convincing preponderance of the evidence each of the allegations of division I of its complaint.

Division II of the committee's complaint concerning the Mumma litigation alleged that respondent failed to respond or cooperate with the investigations undertaken by the Polk County Bar Association and the Committee on Professional Ethics after Mumma complained about respondent's conduct. We agree with the commission's findings of fact on that second count as well.

In *Committee on Professional Ethics and Conduct v. Horn*, 379 N.W.2d 6, 9 (Iowa 1985), this court recently held that an attorney commits a separate ethical violation by failing to answer the committee's request for a reply to its disciplinary complaint. We there noted that "[w]hile an attorney need not incriminate himself, he

has an obligation to respond to the committee's request even if it is only to announce that he is exercising his fifth amendment rights." *Id.* We explained:

The process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the Bar Association is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit. Obviously, unless attorneys cooperate in the process, the system fails and public confidence in the legal profession is undermined. If the members of our profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes. Accordingly, an attorney who disregards his professional duty to cooperate with the Bar Association must be subject to severe sanctions.

*Id.* (quoting *In re Clark,* 99 Wash.2d 702, 663 P.2d 1339, 1341–42 (1983)). *Accord, Committee on Professional Ethics and Conduct v. Stienstra,* 390 N.W.2d 135, 137 (Iowa 1986); *Committee on Professional Ethics and Conduct v. Bromwell,* 389 N.W.2d 854, 857 (Iowa 1986).

Mumma filed his complaint with the grievance committee of the Polk County Bar Association on May 17, 1983. Attorney James Krambeck was appointed by the committee to investigate the matter. The commission made the following findings concerning the committee's allegation that respondent failed to respond or cooperate during the investigation:

On May 26, 1983, Henry A. Harmon, Chairman of the Polk County Grievance Committee, appointed Des Moines attorney James L. Krambeck to investigate the complaint and wrote a letter to the Respondent requesting that he respond to the Complaint by Mr. Mumma.

On June 24, 1983, investigator Krambeck wrote a letter to the Respondent again asking for his response to the Complaint.

Again on July 29, 1983, investigator Krambeck wrote a letter to Jackson asking for a response to the Complaint.

On September 21, 1983, investigator Krambeck wrote letters to Mumma and the Respondent indicating that the Complaint had been dismissed because the grounds for the Complaint were the same as those alleged in the successful legal malpractice action.

On April 18, 1984, Mumma sought and obtained reinstatement of his Complaint with the Polk County Bar Association Grievance Committee.

On May 10, 1984, investigator Krambeck wrote another letter asking the Respondent to serve a response to the Complaint.

During the month of May, 1984, investigator Krambeck made a number of telephone calls to the Respondent's office in an effort to make contact and obtain a response to the Complaint.

Throughout the relevant period of time, the Respondent failed to answer the inquiries by investigator Krambeck and the Polk County Grievance Committee and offered no response to the Complaint.

On June 1, 1984, Henry A. Harmon, Chairman of the Grievance Committee of the Polk County Bar Association, forwarded this matter to the attention of the Complainant herein.

The Respondent was provided notice of the Complaint pursuant to the provisions of Rules 3.2 and 3.3 of the Rules of Procedure of the Professional Ethics and Conduct Committee of The Iowa State Bar Association by registered certified letter of December 17, 1984, received in the Respondent's office on December 18, 1984.

A second notice pursuant to the provisions of Rules 3.2 and 3.3 of the Rules of Procedure of the Professional Ethics and Conduct Committee of The Iowa State Bar Association was mailed by registered certified letter to the Respondent on January 18, 1985, and received in the Respondent's office on January 21, 1985;

and, the second notice expressly advised the Respondent that a complaint may be filed with the Grievance Commission for failure to respond.

The letters referred to in the commission's findings, together with testimony of attorney Krambeck and ethics administrator Hedo Zacherle, forcefully established that respondent failed to cooperate and provide information to the persons investigating the Mumma complaint. Respondent does not contend otherwise. He admitted that he received all communications from the Polk County Bar Association and the committee. He further testified that he was aware of the serious ramifications of failing to respond to the letters.

Respondent testified that he did not respond to those investigating the matter because it was his continuing understanding that Mumma had changed his mind and decided not to pursue his charges filed in writing with the committee. The record demonstrated that Mumma was continuing to visit socially with respondent and would be a reluctant witness at best. Mumma was not present and did not testify at the hearing. These circumstances, however, do not excuse respondent's failure to respond and cooperate in the investigation of his conduct. A disciplinary proceeding is a special procedure through which the court investigates the conduct of its officers. *Committee on Professional Ethics and Conduct v. Bromwell*, 389 N.W.2d at 857; *Committee on Professional Ethics and Conduct v. Kraschel*, 260 Iowa 187, 193, 148 N.W.2d 621, 625 (1967). The court, and the persons and agencies acting on the court's behalf, may and should inquire further into serious charges concerning an attorney's fitness to practice law even after the person who complained has ceased pressing those charges. *See* 7A C.J.S. *Attorney & Client* § 95 at 40 (1980). The commission correctly concluded that respondent, by refusing to cooperate with the persons investigating Mumma's charges, violated several provisions of the Iowa Code of Professional Responsibility for Lawyers: EC 1–4 (lawyer should assist those having responsibility for administration of disciplinary rules); DR 1–102(A)(5) (shall not engage in conduct prejudicial to the administration of justice); DR 1–102(A)(6) (shall not engage in other conduct that adversely reflects on fitness to practice law).

The committee proved the allegations of divisions I and II of its complaint on the Mumma matter by a convincing preponderance of the evidence. Respondent neglected the responsibilities he owed his client and then entirely failed to cooperate with persons conducting duly authorized investigations of his conduct.

## II. *Complaint Concerning Income Tax Returns.*

The committee on November 20, 1985, filed a complaint against respondent contending that he had not filed his federal and state income tax returns for the years 1982 and 1983 within the time permitted by law. The material allegations of the complaint were conceded by respondent to be true when he failed to respond to written requests for admissions. Respondent also admitted when testifying at the hearing that he had not filed those four returns until April 15, 1985, which was many months after the dates in 1983 and 1984 when they were due. Respondent had obtained no extension of time for filing his Iowa income tax returns, and the extensions of time he obtained for filing the federal returns had long since expired by the date he posted them to the Internal Revenue Service.

A convincing preponderance of the evidence establishes that respondent knowingly and willfully failed to file his 1982 and 1983 state and federal income tax returns on time. This misconduct involving late filing of income tax returns violated various state and federal laws, ethical considerations, and disciplinary rules which we have cited, explained, and relied upon in a legion of similar cases. *See Committee on Professional Ethics and Conduct v. Vasey*, 373 N.W.2d 146, 147 (Iowa 1985) (suspending license to practice law for filing of

1981 state and federal income tax returns in 1983; sixty-day extension for federal return had expired and no state extension had been requested); *Committee on Professional Ethics and Conduct v. Crawford*, 351 N.W.2d 530, 531–32 (Iowa 1984) (citing 13 preceding cases involving discipline of Iowa lawyers for income tax violations).

### III. Complaint Concerning Representation of Wyant.

The committee on February 19, 1986 filed a complaint concerning respondent's representation of Christine Wyant in connection with a claim of professional negligence she wished to assert against a medical clinic and a doctor who had been treating her for arthritis. Respondent undertook that representation pursuant to a written contract of employment signed on May 5, 1978, and he filed a lawsuit on behalf of Wyant in Polk County District Court on October 5, 1979 when he was unable to negotiate a satisfactory settlement of her claim for damages. Thereafter respondent grossly mishandled what the committee correctly determined to be "an obviously meritorious claim."

We summarize the facts on this Wyant matter from testimony at the hearing and the allegations of the complaint which respondent belatedly admitted when he personally appeared at the hearing before a commission panel. The lawyer retained to defend the Wyant lawsuit had taken the deposition of respondent's client, then told respondent that he could and would obtain for Wyant $40,000 in settlement of the lawsuit. Respondent never responded to that offer and did not even communicate it to his client. Respondent made no further effort to achieve a fair settlement of the claim and lawsuit, and he did nothing to prepare the case or schedule it for trial.

On August 11, 1981, nearly two years after he had filed the lawsuit, respondent was notified in writing by the clerk of court that the case would be dismissed for lack of prosecution unless continued by order or tried before January 1, 1982. *See* Iowa R.Civ.P. 215.1. Respondent did nothing to protect Wyant after receiving that notice, and the case was dismissed on January 1, 1982. Inconceivably, respondent did not even attempt to reinstate the case within the following six months, a procedure permitted by rule 215.1, thereby depriving his client of her last chance to keep alive her medical malpractice lawsuit against the medical clinic and doctor.

It is small consolation to respondent's client that she thereafter retained private counsel, filed a legal malpractice action against respondent, and obtained a default judgment against him in the amount of $53,738, interest from October 18, 1979, and costs. Respondent had no professional liability insurance from which that judgment might be paid, and the judgment remains unsatisfied.

By his misconduct in handling the Wyant claim and lawsuit, respondent violated those disciplinary rules and ethical considerations we have cited and referred to in division I of this opinion with respect to his mishandling of the Mumma civil litigation. Moreover, as with the committee's complaint concerning the Mumma matter, respondent failed to cooperate with the persons called upon by the committee to investigate the charges Christine Wyant referred to it. Throughout the period in which the committee was investigating those charges, and thereafter when its complaint had been filed and was being prosecuted, respondent refused to offer persons inquiring into the matter any response, explanation, cooperation, or assistance whatsoever. By this uncooperative attitude and conduct respondent also committed separate violations of those ethical considerations and disciplinary rules cited in division I of this opinion pertaining to his failure to respond and cooperate concerning the Mumma charges.

### IV. Appropriate Discipline.

In deciding what discipline is appropriate under these circumstances, we consider but

are not bound by the recommendations of the three separate commission panels. We take into account the fact that respondent was the subject of one prior disciplinary action which resulted in a public reprimand issued by the committee. *See Bromwell,* 389 N.W.2d at 857; *Committee on Professional Ethics and Conduct v. Kelly,* 357 N.W.2d 315, 319 (Iowa 1984). It is noteworthy that the panel of the commission which considered only the Mumma matter and the prior reprimand recommended that respondent's license to practice law be revoked. Each of the other two commission panels recommended that respondent's license be suspended for periods of six months based only on the prior reprimand and the particular incident it was considering, in one instance the late-filed income tax returns and in the other instance the Wyant matter.

Clearly, respondent flagrantly mishandled every conceivable aspect of the defense of his client Mumma and the prosecution of his client Wyant's meritorious cause of action. His bungling of those cases extended over a period of nearly three years in one case and four years in the other. Moreover, his total failure to cooperate with the investigation of those matters demonstrated his lack of respect for the rules of our Iowa court system and the persons charged with responsibility for maintaining ethics in the legal profession. When we consider respondent's prior public reprimand, his basic disregard for the rights of his clients, his lack of respect for the disciplinary process, and his violation of rules governing the filing of income tax returns, we conclude that a mere suspension of respondent's license to practice law, even for a lengthy period of time, would be an inadequate sanction. We hold that his license must be, and it is, revoked.

LICENSE REVOKED.

All Justices concur except LAVORATO, J., who takes no part.