**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**John J. PIAZZA, Respondent.**

**No. 86–1715.**

Supreme Court of Iowa.

May 13, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

John J. Piazza, Yardley, Pennsylvania, pro se.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, CARTER and WOLLE, JJ.

McGIVERIN, Justice.

This is a de novo review of the Grievance Commission's findings and recommendations in an attorney disciplinary proceeding involving respondent John J. Piazza conducted pursuant to Iowa Supreme Court Rule 118.10. We revoke his license to practice law.

A complaint consisting of four counts was filed by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (Committee) against respondent before our Grievance Commission (Commission). The complaint alleged that respondent violated various ethical considerations and disciplinary rules in the course of his representation of two clients and in the exercise of his law office management practices. In addition, Piazza was charged with failing to cooperate with the Committee's inquiry into a complaint against him.

Following a full evidentiary hearing on the allegations, the Commission issued its

findings of fact, conclusions of law and recommendations as to the appropriate discipline for respondent. It recommended that his license to practice law be revoked.

Respondent filed a notice of appeal of the Commission's recommendation; however, he failed to file a designation of appendix or brief, so we declared him in default. *See* Iowa Sup.Ct.R. 118.11. We therefore review de novo the record before the Commission and its recommendation as if no appeal had been taken.

■■■ The Committee has the burden of proving by a convincing preponderance of the evidence that respondent has violated the charged provisions of the code of professional responsibility. *Committee on Professional Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 21 (Iowa 1985); *Committee on Professional Ethics & Conduct v. Lawler*, 342 N.W.2d 486, 487 (Iowa 1984). In reviewing the record, we are not bound by the Commission's findings and recommendations, but we give them respectful consideration. *Committee on Professional Ethics & Conduct v. Jackson*, 391 N.W.2d 699, 699 (Iowa 1986); *Blomker*, 379 N.W.2d at 20–21.

■■■ The ethical violations with which respondent is charged arose out of his: (1) handling of law firm partnership funds; (2) handling of funds paid on retainer for an appeal for Marsha Mulligan; (3) pursuit of judicial review of an unemployment compensation matter for Thomas Hohenshell; and (4) failure to respond to the Committee's complaint on the Hohenshell matter. We consider each of these allegations separately.

I. *Handling of partnership funds.* In January 1983, respondent, Ted Prine and Dominic Corsello entered into a partnership for the practice of law in Des Moines. Under their agreement, fees earned by a partner were to be deposited in the firm's general checking account; then, after payment of overhead expenses, partnership net income was to be shared equally by the partners.

The evidence before the Commission showed that respondent wrote numerous checks on the partnership checking accounts during 1983. Respondent misrepresented several checks on the check register as payable for court-related expenses when, in fact, the checks were made payable to respondent. Additionally, respondent registered the checks for amounts far less than the amount for which the checks were actually payable. Some examples of the magnitude of respondent's activities would be illustrative: $500 check made payable to himself, registered in checkbook as a $10 check for filing fees; $600 check made payable to himself, entered as payable to "Skinner for research" in the amount of $25; and a check registered as $10 for a medical report, actually made payable to respondent for $200. In this fashion, respondent converted to his own use $3,340 of the partnership checking account balance.

The evidence also showed that respondent received fees from clients and the Polk County auditor for indigent defense in 1983 that he did not deposit in the partnership account. These fees totalled over $8,900. Respondent accepted these fees and personally endorsed the checks and converted the money to his own use.

Finally, the partners had established a reserve account to accumulate funds to make payments on a $10,000 note, the loan proceeds of which were used to commence the law partnership. The partners were not to use this account to draw salaries; however, respondent wrote a check payable to himself on this account in the amount of $500. Respondent attempted to conceal his writing of the check by executing a check out of numerical sequence. He endorsed the check and converted the money to his own use.

Respondent admitted that he had written the checks or retained the fees in question, but he contended that he was entitled to the funds which he obtained. He claimed he did not intend to maliciously hide anything from his partners. Understandably, his partners disagreed with respondent's position.

The Committee alleged each of these violations in its complaint and the Commission

found facts to support the allegations. We find a convincing preponderance of the evidence supports the charges that respondent Piazza converted or misappropriated over $10,000 of partnership funds to his own use without the knowledge or authority of his law partners. Accordingly, we conclude his conduct constituted violations of the following provisions of the code of professional responsibility: EC 1–5 (lawyer must maintain high standards of professional conduct); DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule); DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude); and DR 1–102(A)(6) (lawyer shall not engage in conduct adversely reflecting on fitness to practice).

II. *The Mulligan matter.* In April 1983 Marsha Mulligan retained respondent to handle a criminal appeal. She paid a total of $5,000 for future work in preparing briefs and arguing her appeal before this court. Respondent did not deposit the $5,000 in the partnership's trust account; rather, he deposited $2,000 in the partnership general checking account and he personally retained the remaining $3,000. Respondent did not separate these funds from his personal funds and by his acts converted the Mulligan funds to his own use. He admits he should have placed the $5,000 in the partnership trust account and drawn from that account as the fee was earned.

The Committee alleged and the Commission found that respondent Piazza commingled his client's funds with his personal funds in violation of: EC 1–5; DR 1–102(A)(1); DR 1–102(A)(3); DR 1–102(A)(6); EC 9–5 (separation of client's funds); DR 9–102(A) (maintenance of trust account for only client's funds); and DR 9–102(B) (maintenance of a record of those funds). We agree that a convincing preponderance of the evidence established these violations.

III. *The Hohenshell matter.* Throughout 1983 and early 1984, respondent represented Thomas Hohenshell in an unemployment matter before the Iowa Department of Job Service and in a related matter. Lecil Hohenshell, Thomas' father, paid respondent for this representation. Thomas Hohenshell's case was unsuccessful at the Job Service level.

Respondent recommended that Hohenshell seek judicial review by the Iowa district court for Polk County. Lecil paid respondent $500 as a retainer for the judicial review proceeding. When respondent recommended pursuit of judicial review and accepted the $500 retainer, the time had already expired for filing a petition for judicial review in district court from the final Job Service agency decision.

Respondent did not deposit the $500 in a trust account, but rather commingled that money with his personal funds. He then falsely represented to the Hohenshells that the petition for judicial review had been filed. He never informed the Hohenshells that the petition had not been filed or that the time for judicial review had, in fact, passed.

The Committee alleged and the Commission found that respondent Piazza misrepresented himself to the Hohenshells on this matter and commingled funds paid by Lecil with respondent's personal funds. We agree with the Commission's findings and conclude that a convincing preponderance of evidence showed respondent's conduct in the Hohenshell matter violated several provisions of the code of professional responsibility: EC 1–5; DR 1–102(A)(1); DR 1–102(A)(3); DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation); DR 1–102(A)(6); EC 9–5; DR 9–102(A); and DR 9–102(B).

IV. *Failure to cooperate with Committee's inquiry.* The Committee on Professional Ethics and Conduct provided respondent with notice by certified mail of the allegations regarding the Hohenshell matter. Committee on Professional Ethics and Conduct Rules 3.1, 3.2. The letter instructed respondent that he had twenty days in which to respond to the complaint made by Hohenshell to the Committee. Committee rule 3.3.

The notice of complaint sent to respondent also referred to his duties under the Committee rules, which were enclosed with the letter. He was notified of the conse-

quences of failure to file with the Committee his responsive explanation of the Hohenshell matter. One of the rules, to which he was referred, states:

> If after twenty days, no such response has been received, the respondent shall be notified by restricted certified mail that unless a response is made within ten days from receipt of notice, the committee may file a complaint with the grievance commission for failure to respond, and concerning all or any portion of the matter about which the original complaint was made.

Committee rule 3.3. We have held that failure to respond to a Committee complaint, pursuant to the Committee rule, constitutes a violation of DR 1–102(A)(5), which notes, "A lawyer shall not engage in conduct that is prejudicial to the administration of justice." *E.g., Committee on Professional Ethics & Conduct v. Batschelet,* 402 N.W.2d 429 (Iowa 1987).

Testimony at the hearing tended to show respondent had spoken with an investigator for the Committee on two occasions prior to the date of the letter. On receipt of the letter from the Committee, respondent assumed his prior contact was sufficient; he then did nothing further. However, Piazza still had a duty to respond to the Committee's letter and failed to do so.

The Commission found that respondent Piazza's conduct violated EC 1–4 (lawyer should voluntarily reveal unprivileged information to proper officials); EC 1–5; DR 1–102(A)(1); DR 1–102(A)(5) (lawyer shall not engage in conduct prejudicial to the administration of justice); and DR 1–102(A)(6). We agree that these violations have been proved by the Committee by a convincing preponderance of the evidence.

V. *Appropriate discipline.* Discipline is warranted for respondent's conduct. We have repeatedly expressed that an attorney holds a position of trust as an officer of the court. *E.g., Committee on Professional Ethics & Conduct v. Bromwell,* 221 N.W.2d 777, 779 (Iowa 1974). When an attorney breaches that trust, the attorney is subject to sanctions appropriate to re-

store public confidence in the legal profession and the legal system. *Id.* at 779–80.

Mishandling of client funds is particularly reprehensible. We have consistently held that revocation is the appropriate sanction for commingling and converting client funds. *See, e.g., Committee on Professional Ethics & Conduct v. Fugate,* 394 N.W.2d 408, 410 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Shifley,* 390 N.W.2d 133, 135 (Iowa 1986).

Respondent misrepresented the status of the Hohenshell case when questioned regarding its status by the client. Misrepresentation of the status of a client's appeal or mishandling of the client's case has been the cornerstone of two recent license revocations. *See Committee on Professional Ethics & Conduct v. Jackson,* 391 N.W.2d 699, 705 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Glenn,* 390 N.W.2d 131, 132–33 (Iowa 1986).

Additionally, respondent misappropriated funds of the law firm in which he was a partner. We have held that this type of behavior adversely impacts on an attorney's fitness to practice law. *See Committee on Professional Ethics & Conduct v. Hanson,* 244 N.W.2d 822, 823–24 (Iowa 1976).

Finally, respondent failed to respond to the Committee's initial complaint. This is separate misconduct deserving of a sanction. *Committee on Professional Ethics & Conduct v. Stienstra,* 395 N.W.2d 638, 640 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Free,* 394 N.W.2d 373, 374 (Iowa 1986); *Glenn,* 390 N.W.2d at 132–33; *Committee on Professional Ethics & Conduct v. Bromwell,* 389 N.W.2d 854, 857 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Horn,* 379 N.W.2d 6, 7–9 (Iowa 1985).

We consider each of these violations in sanctioning respondent.

We also take into consideration prior disciplinary sanctions against respondent. *Jackson,* 391 N.W.2d at 705. Respondent has had two prior suspensions: one for failure to meet continuing legal education requirements, Iowa Supreme Court Rule 123.5; and another for failure to file in-

come tax returns, *Committee on Professional Ethics & Conduct v. Piazza,* 389 N.W.2d 382 (Iowa 1986) (twelve-month suspension).

Respondent Piazza has violated the trust we reposed in him by misappropriating funds of his clients and his law partners, misrepresenting the status of a client's case to that client, and failing to respond to inquiries of the Committee on Professional Ethics and Conduct. Respondent also has shown his lack of respect for the court system and our code of professional responsibility by his repeated ethical violations and failure to respond to the Committee's initial complaint.

We conclude that the revocation of respondent's license to practice law is the only way to impress on him and others the seriousness of these offenses; therefore, Piazza's license is revoked.

LICENSE REVOKED.