COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Thomas D. GARDALEN, Respondent.

No. 87–721.

Supreme Court of Iowa.

Oct. 21, 1987.

Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, and Norman G. Bastemeyer, Des Moines, for complainant.

Thomas D. Gardalen, Holstein, pro se.

**LAVORATO, Justice.**

In this attorney disciplinary proceeding involving the respondent, Thomas D. Gardalen, we review the Grievance Commission's findings and recommendations pursuant to Iowa Supreme Court Rule 118.10. We suspend Gardalen's license to practice law indefinitely, with no possibility of reinstatement for a period of six months from the date of this opinion.

Gardalen is a former employee of the Internal Revenue Service. He worked for that agency as an estate tax attorney for eight and one-half years, until January 1981. Gardalen is licensed to practice law in Iowa and has done so in Holstein since leaving his government employment.

The Committee on Professional Ethics and Conduct filed a complaint consisting of three counts, alleging that Gardalen had violated various disciplinary rules and ethical considerations of the Iowa Code of Professional Responsibility for Lawyers. The record made in the hearing before the commission included the complaint, the committee's request for admissions, testimony of witnesses, and other evidence. Gardalen did not respond to the request for admissions served upon him by the committee. After finding that the allegations of the complaint were true, the commission recommended that Gardalen's license to practice law be suspended for a period of not less than six months.

Gardalen did not appeal from the commission's report to this court. *See* Iowa Sup.Ct.R. 118.11. Nevertheless, we review de novo the record made before the commission, determine the matter, and impose, as we deem appropriate, a lesser or greater sanction than the discipline recommended by the commission. Iowa Sup.Ct.R. 118.10.

The standards governing the review by this court in lawyer disciplinary proceedings are summarized in *Committee on Professional Ethics & Conduct v. Blomker:*

> We have held that the commission's findings and recommendations are given respectful consideration although they are not binding on this court. The allegations must be established by a convincing preponderance of the evidence, a higher degree of proof than that required in civil actions, yet falling short of the proof required to sustain a criminal conviction. However, matters in a request for admissions may be relied upon to meet this evidentiary burden if not denied or otherwise objected to by respondent.
>
> Violations of Ethical Considerations in the Code of Professional Responsibility are subject to disciplinary sanctions no less than violations of Disciplinary Rules.

To determine whether and to what extent discipline should be imposed in such a proceeding, it is necessary for this court to review the evidence de novo, considering the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole and the respondent's fitness to continue in the practice of law.

379 N.W.2d 19, 20–21 (Iowa 1985) (citations omitted).

Two of the three counts in the complaint deal with Gardalen's conduct in handling two lawsuits for his client, Steven Burns: *Burns v. Fix*, Buena Vista County District Court No. 21803 and *Hammer d/b/a Agri–Farm Supply v. Burns*, Ida County District Court No. 11952. The third count deals with Gardalen's failure to respond to the committee's inquiries concerning Burns' complaint. We first consider the complaint regarding the lawsuits and then the complaint regarding Gardalen's failure to respond.

### I. *The Lawsuits.*

A. *Burns v. Fix.* On March 5, 1981, Steven R. Burns was involved in an automobile accident in which he suffered personal injuries. In February 1983, a short time before the statute of limitations would have expired, Burns contacted Gardalen to represent him in connection with the accident. Because the lawsuit was outside his area of expertise (taxes, probate, and property law) and the time was short, Gardalen sought and was granted permission from the partner in charge of the firm's trial work to take the case. Another partner prepared the petition; Gardalen, however, signed it and thus became attorney of record.

The petition was filed on February 28, 1983, and named Ricky Fix, the driver of the other vehicle, as defendant. Although Fix and his wife were co-owners of the vehicle, the wife was not named as a defendant. Nor were any consortium claims on behalf of Burns' wife and children included in the petition.

A week after the petition was filed, Gardalen and Fix's insurance carrier agreed to an indefinite extension with a view toward settling the case without the necessity of Fix's filing an answer. The insurance carrier acknowledged liability and was only concerned about the extent of Burns' injuries. In a letter to Gardalen the carrier stated, "If you will be kind enough to provide me with a recent medical report and details concerning medical specials, as well as your additional thoughts concerning the loss of use aspect of the suit, and a reasonable demand for settlement, I believe we can conclude the matter."

During the following fifteen months, Burns made numerous telephone calls to Gardalen to inquire about the status of the case. Gardalen failed to return many of those calls. On those occasions when Burns did make contact with him, Gardalen would tell Burns that things were proceeding well and that he was in contact with the insurance company representatives. As late as June 1985, Gardalen assured Burns he was in contact with the insurance company and they were trying to settle the case.

In August 1984 the clerk of court in Buena Vista County mailed a 215.1 notice to Gardalen. *See* Iowa R.Civ.P. 215.1. The notice stated the case would be dismissed unless tried prior to January 1, 1985. At the time the notice was mailed, Gardalen was in the midst of a dispute with the attorney who had bought out the partnership interests of Gardalen's former partners. According to Gardalen, the attorney did not release Burns' files to him until late December 1985, at which time Gardalen first learned of the notice.

Gardalen chose not to secure a default to prevent dismissal because of his prior agreement with Fix's insurance carrier for an indefinite extension. Moreover, the attorney representing Fix as to the excess portion of Burns' claim rejected Gardalen's request for a continuance. Because of these circumstances, Gardalen allowed the case to pass the January 1 deadline without a continuance, resulting in an automatic

dismissal of the case. *See* Iowa R.Civ.P. 215.1.

■ Under these circumstances, Gardalen's duty was clear: he should have promptly notified the client of the dismissal and applied for reinstatement of the case. Gardalen did neither. Instead, as late as June 1985, he was giving Burns false assurances that the case would be settled. In truth, the case would have been irretrievably lost by the end of the month without an order of reinstatement. *See id.*

After this last conversation, Burns sensed he should contact another attorney for, as he called it, a second opinion. Fortunately, Burns' new attorney immediately investigated the status of the case, discovered that it had been dismissed, and filed an application for reinstatement six days before the deadline. The district court granted the application and ordered the case reinstated. Not successful, however, was the new attorney's subsequent efforts to assert claims on behalf of Burns' wife and children.

B. *Hammer d/b/a Agri–Farm Supply v. Burns.* Burns also retained Gardalen sometime in March 1983 to defend him in a breach of contract action brought by Burns' former partners. Gardalen contacted Hammer's attorney, who allowed Gardalen additional time to answer. Thereafter, Gardalen took no action on behalf of Burns in this suit. Finally, on December 7, 1984, the clerk of the Ida County District Court entered a default judgment on behalf of Hammer and against Burns for $10,000 together with interest and costs.

As was the case in the personal injury action, Burns made numerous telephone calls in 1983, 1984, and through June 1985 to Gardalen, seeking information about the status of the Hammer suit. Gardalen failed to return those calls on a number of occasions. On those occasions when Burns did reach Gardalen, Gardalen told him that the case "was going fine," that he would "probably know more in a couple of weeks."

In December 1984 Burns learned, through a local newspaper, that the judgment had been entered against him. Immediately, Burns contacted Gardalen about the judgment. Gardalen professed ignorance about the judgment, told Burns he would try to find out about it, and set up an appointment to see Burns the following day. Gardalen could not reach Hammer's attorney, who was out of the state. The following day Gardalen told Burns of his unsuccessful effort to reach Hammer's attorney but assured Burns that he would take care of the judgment. In the following months, contrary to his assurance, Gardalen took no action to have the judgment set aside.

Finally, in June 1985 Burns' new attorney, who was looking into the lawsuit against Fix, also undertook an investigation of the Hammer suit. The attorney discovered that, contrary to Gardalen's representations to Burns, Gardalen had in fact done nothing to have the default judgment set aside. The new attorney was ultimately successful in having the default set aside.

We agree with the commission that [e]ven though mitigating circumstances existed in the fall of 1984 when [Gardalen] was facing turmoil in his law practice due to difficulty in obtaining access to the files ... held by his ex-partner ..., and in failure to obtain orders pertaining to this file from the clerk's office, no excuse can be given for allowing the [*Fix*] case to be dismissed pursuant to rule 215.1 and a default judgment to be entered in the *Hammer* case. [Gardalen] failed to take any substantial and effective action on behalf of his client Steven Burns during the years the *Fix* and *Hammer* cases were in effect. Once he learned of the pending dismissal pursuant to rule 215.1, [Gardalen] took no effective action to avoid dismissal. Furthermore, once the *Fix* case was dismissed and once the *Hammer* case had gone into default, he took no action whatsoever to obtain reinstatement of the *Fix* case or to set aside the default judgment in the *Hammer* case. Worse yet, [Gardalen] actively misrepresented the status of the cases by failing even to advise the client that the *Fix* case had been dis-

missed and by advising the client only that he was talking with the insurance company and they were going to try to reach a settlement on the case.

Gardalen's inaction in both cases, as described above, easily demonstrates a conscious disregard of responsibilities assumed by Gardalen once he undertook to represent Burns. Thus, we agree with the commission that Gardalen violated Iowa Code of Professional Responsibility for Lawyers DR 6–101(A)(3) (lawyer shall not neglect a legal matter entrusted to him). *See Committee on Professional Ethics & Conduct v. Megan,* 402 N.W.2d 432, 433–34 (Iowa 1987) (neglect in allowing statute of limitations to expire on wrongful death action); *Committee on Professional Ethics & Conduct v. Jackson,* 391 N.W.2d 699, 701, 704 (Iowa 1986) (neglect in prosecuting civil appeal and in allowing case to be dismissed under rule 215.1); *Committee on Professional Ethics & Conduct v. Glenn,* 390 N.W.2d 131, 132–33 (Iowa 1986) (neglect in allowing civil appeal to be dismissed for lack of prosecution); *Committee on Professional Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 21–22 (Iowa 1985) (neglect in not responding to various communications of client in postconviction proceedings and in not withdrawing as counsel because of a conflict of interest); *Committee on Professional Ethics & Conduct v. Kelly,* 357 N.W.2d 315, 318 (Iowa 1984) (neglect in prosecuting criminal appeal); *Committee on Professional Ethics & Conduct v. Freed,* 341 N.W.2d 757, 758–59 (Iowa 1983) (neglect in allowing civil appeal to be dismissed for lack of prosecution).

Moreover, the same inaction amply supports the commission's finding that Gardalen violated DR 1–102(A)(5) (lawyer shall not engage in conduct prejudicial to administration of justice); EC 6–1 (lawyer should act with competence and proper care in representing clients and accept only matters he is competent to handle); EC 6–4 (lawyer should prepare adequately for and give appropriate attention to his legal work); DR 7–101(A)(1) (lawyer shall not fail to seek lawful objectives of his client); DR 7–101(A)(2) (lawyer shall not intention-

ally fail to carry out a contract of employment entered into with a client); and DR 7–101(A)(3) (lawyer shall not intentionally prejudice or damage his client). We note that allegations of violations of all these disciplinary rules and ethical considerations were included in a request for admissions served upon Gardalen by the commission. By not responding to the request, Gardalen admitted the allegations, *Jackson,* 391 N.W.2d at 700; *Blomker,* 379 N.W.2d at 21; Iowa R.Civ.P. 127, 128, and the committee could rely upon them to meet its evidentiary burden, *Blomker,* 379 N.W.2d at 21.

Implicit in the above quotation of the commission's findings is the conclusion that Gardalen's misrepresentation of the status of the two cases aggravated his unethical conduct. Like the commission, we conclude this conduct was a violation of DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). *See Jackson,* 391 N.W.2d at 700 (lawyer falsely represented that he had submitted all necessary material for appeal); *Kelly,* 357 N.W.2d at 318 (lawyer falsely represented that he was prosecuting appeal); *Committee on Professional Ethics & Conduct v. Ryan,* 341 N.W.2d 755, 756–57 (Iowa 1983) (lawyer falsely represented that he had filed lawsuits). Gardalen's failure to respond to the request for admissions concerning violation of DR 1–102(A)(4) buttresses the commission's, as well as our, conclusion that he violated this disciplinary rule.

## II. *Failure to Respond to the Committee's Inquiries.*

Gardalen ignored two letters from the committee requesting a response to Burns' complaint concerning the two lawsuits. Although he admitted receiving the letters, Gardalen could give no reasons for not responding other than he "developed some sort of mental block toward this case."

Since we first said so in *Committee on Professional Ethics & Conduct v. Horn,* 379 N.W.2d 6, 7–9 (Iowa 1985), we have repeatedly held that a lawyer commits a separate ethical violation when the lawyer ignores the committee's request for a reply

to its disciplinary complaint. *See, e.g., Committee on Professional Ethics & Conduct v. Miller,* 412 N.W.2d 622, 624 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Rosene,* 412 N.W.2d 634, 637 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 261 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Larsen,* 407 N.W.2d 601, 602 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Sytsma,* 405 N.W.2d 844, 844, 846 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Piazza,* 405 N.W.2d 820, 823 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Johnson,* 404 N.W.2d 184, 186 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Burrows,* 402 N.W.2d 749, 752 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Megan,* 402 N.W.2d 432, 434 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Stienstra,* 395 N.W.2d 638, 640 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Free,* 394 N.W.2d 373, 374 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Stienstra,* 390 N.W.2d 135, 137 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Bromwell,* 389 N.W.2d 854, 857 (Iowa 1986). Because a lawyer's cooperation with the committee's investigative requests is so important to the integrity of the investigative process as well as to the public's confidence in our profession, we recognize that any failure to cooperate with the committee should be met with severe sanctions. *Horn,* 379 N.W.2d at 9. By the same token, in meting out discipline, we have given much weight to a lawyer's voluntary cooperation. *See, e.g., Committee on Professional Ethics & Conduct v. Cook,* 409 N.W.2d 469, 471 (Iowa 1987) (period of suspension substantially reduced because of lawyer's voluntary disclosure that he failed to file tax returns in timely manner).

We conclude, as did the commission, that in failing to respond to the committee's inquiries, Gardalen violated DR 1–102(A)(5) (lawyer shall not engage in conduct prejudicial to administration of justice); DR 1–102(A)(6) (lawyer shall not engage in conduct adversely reflecting on his fitness to practice law); and EC 1–4 (lawyer should assist committees having responsibility for administration of disciplinary rules).

### III. *Discipline.*

Gardalen asked the commission to consider the following as mitigating circumstances: (1) his favorable testimony in the hearing to reinstate the *Fix* case and in the hearing to set aside the default judgment in the *Hammer* case; (2) his payment of $10,000 to Burns for legal expenses and damages in both cases; and (3) his intended future limitation of practice to those areas in which he has expertise. As to the first two matters, suffice it to say that Gardalen had an obligation to rectify whatever harm he caused his client. Additionally, as to the second matter, we have held in similar circumstances that a damage payment to a client is not a mitigating circumstance. *Kelly,* 357 N.W.2d at 319; *Freed,* 341 N.W.2d at 759. As to the third matter, Gardalen is already under an obligation to accept only matters he is competent to handle. *See* EC 6–1.

We agree with the commission's recommendation that Gardalen's license to practice law in this state should be suspended indefinitely, with no possibility of reinstatement for a period of six months from the date of this opinion. The suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Any application for reinstatement shall be governed by Iowa Supreme Court Rule 118.13. Gardalen must include in his application an assurance that he will not handle matters which may involve state court litigation unless he either (1) associates with a lawyer experienced in that type of practice or (2) secures our permission upon a showing of acquired proficiency in the relevant area of the law. Costs are assessed to Gardalen pursuant to Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.

All Justices concur except SNELL, J., who takes no part.