IOWA SUPREME COURT BOARD
OF PROFESSIONAL ETHICS &
CONDUCT, Complainant,

v.

Bryan L. SYLVESTER, Respondent.

No. 96–124.

Supreme Court of Iowa.

May 22, 1996.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Bryan L. Sylvester, Peoria, Illinois, pro se, for respondent.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

In this attorney disciplinary proceeding, the Iowa Supreme Court Grievance Commission recommended that we revoke Bryan L. Sylvester's license because he converted client and law firm funds. On our de novo review, we agree and revoke Sylvester's license to practice law.

I.  *Background Facts.*

A Muscatine law firm hired Sylvester as an associate in May 1992. He had previously been an associate at another law firm and had several years litigation experience. The Muscatine position was full-time and paid Sylvester $33,000 per year.

In February 1995 the firm decided to discharge Sylvester because things were not going well between the firm and Sylvester. The firm had not decided whether to discharge him immediately or to tell him to look for other work. Several partners met with Sylvester on Friday, February 17, 1995. During that meeting the partners told Sylvester things were not working out. They suggested he take a week off, after which they would talk again.

The following Monday one of the firm's attorneys began trying a dissolution of mar-

riage case. Sylvester had previously represented the attorney's client in a criminal matter. During trial an issue arose as to the amount of fees the client had paid Sylvester. The client had borrowed money from his mother to pay the fees and introduced checks to establish the amount that he owed his mother.

The attorney trying the dissolution of marriage case recollected that the client had paid nothing to the firm. At the end of the day, the attorney returned to her office and conferred with the office manager about whether the client had paid any fees. The manager checked the records, which revealed the client had indeed paid the firm nothing. The attorney had in her possession a $500 check payable to Sylvester. Up to this point the attorney had not checked the endorsement. When she did so she saw that Sylvester had endorsed the check and cashed it. The manager immediately began checking the firm's financial records and discovered one or two other incidents where it appeared Sylvester had taken fees from clients and converted them to his own use.

The following day Sylvester stopped at the office to pick up some of his things. A senior partner told him to leave and return later for an after-hours-meeting. At the meeting one of the partners showed Sylvester a photocopy of the $500 check. When asked to explain, Sylvester said it had only happened two other times and he put the total taken at $1000.

The firm began an investigation to determine the extent of the funds taken. The firm had several other meetings with Sylvester during which he admitted converting $6199. The firm suspected Sylvester had taken substantially more than that, but it had a difficult time verifying information and locating clients who might help substantiate the loss.

The firm's inability to accurately assess its actual loss is largely attributable to Sylvester. He picked his prey carefully. He only chose to victimize those clients who, in his estimation, (1) would not make trouble, or (2) appeared to be transitory and would be difficult to contact or trace should his clandestine activities be discovered. Sylvester further complicated the firm's plight by his unwillingness to aid in the firm's investigation. This was contrary to the court's sentencing order in an underlying criminal proceeding.

The firm's bookkeeper testified at the disciplinary hearing. She testified that, according to her records, Sylvester had converted funds in transactions involving seventeen different clients. With respect to seven of these clients, Sylvester took funds—on more than one occasion—that he should have given to the firm. According to this witness, Sylvester began converting funds two weeks after he began his employment in 1992, and this continued through 1994.

The bookkeeper and a partner described one of the ways Sylvester was able to convert fees. Sylvester would receive a retainer in cash from a client and give the client a receipt for the full amount of the retainer. He would then tear the receipt copies from the receipt book so there would be no record of the receipt that he had given the client. He would then write out a new receipt for the firm in an amount less than the total he received. He would pocket the difference and turn over the lesser amount to the bookkeeper.

One of the exhibits in evidence is a check issued by a Kurt Cronbaugh to the firm as trust account payee for $250. The firm's name is crossed out and Sylvester's name appears in its place. Sylvester endorsed the check, which is dated November 19, 1992.

II. *Background Proceedings.*

On June 8, 1995, the Muscatine County Attorney filed a two-count trial information against Sylvester. Count I was for theft in the second degree. *See* Iowa Code §§ 714.1(1), 714.1(2), 714.2(2) (1995). Count II was for forgery. *See* Iowa Code §§ 715A.2(1)(a), 715A.2(2)(a). Both counts are class "D" felonies.

Under a plea bargain, Sylvester pleaded guilty on June 19 to Count I, and the State dismissed Count II. At sentencing on July 20, the court sentenced Sylvester to a term of imprisonment not to exceed five years. The court immediately suspended this sentence and placed Sylvester on probation for

three years. In addition, the court ordered Sylvester to make full restitution to the firm and to cooperate in the firm's efforts to determine the full extent of its loss.

Sylvester made restitution payments to the firm totaling $223.93 in October, November, and December 1995. As mentioned, contrary to the court's directive in the sentencing order, Sylvester has not cooperated with the firm's ongoing investigation of the incident.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against Sylvester with the commission on September 26, 1995. *See* Iowa Sup.Ct.R. 118.5. The complaint alleged Sylvester's actions in converting client and firm funds violated the following disciplinary rules: (1) DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude); (2) DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); (3) DR 9–102(A) (lawyer has a duty to maintain client funds in trust account). Sylvester's actions in altering the payee's name on a client's check, cashing that check, and keeping the money were alleged as additional violations of DR 1–102(A)(3) and DR 1–102(A)(4). The board also sent Sylvester a request for admissions.

Sylvester did not respond to the complaint. Nor did he answer the request for admissions. He also failed to attend the January 4, 1996, hearing before the commission. The record made in the hearing included the complaint, the board's request for admissions, witness testimony, and other evidence. After finding the allegations contained in the board's complaint were true, the commission recommended that we revoke Sylvester's license to practice law.

Sylvester has not appealed from the commission's report to us. *See* Iowa Sup.Ct.R. 118.11.

### III. *Scope of Review*

We automatically review attorney disciplinary recommendations. Our review of the record made before the commission is de novo. *See* Iowa Sup.Ct.R. 118.10. We make the ultimate determination whether discipline is warranted and what sanction, if appropriate, to impose. *Id.*

■■■ The board must prove its allegations by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Conzett*, 476 N.W.2d 43, 44 (Iowa 1991). We may rely on the substance of the board's request for admissions if the respondent has not denied or otherwise responded to it. *Id.* Certain well-recognized standards guide our determination that discipline is warranted: "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole and the respondent's fitness to continue in the practice of law." *Committee on Professional Ethics and Conduct v. Blomker*, 379 N.W.2d 19, 21 (Iowa 1985).

### IV. *Findings of the Commission.*

The commission made the following findings. First, Sylvester violated DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude) and DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The commission based these findings on Sylvester's conduct in (1) converting funds belonging to clients and the firm, and (2) altering the payee's name on a client check and endorsing the check with fraudulent intent.

Second, Sylvester violated DR 9–102(A) (lawyer has a duty to maintain client funds in trust account). The commission based this finding on Sylvester's conduct in (1) accepting funds from clients to be used as retainers and held against services to be performed (2) without depositing such funds in the firm's trust account. Sylvester converted a portion of such funds and reported the balance to the firm as a retainer.

As one partner testified, if no work had been done to earn the fee, the firm was obligated to return the money to the client. If some work was done, the firm was paid to the extent Sylvester reported the fee. To the extent Sylvester did not report the fee, the firm was obligated to furnish services

without charge. So, in reality, the clients and the firm were both victims of Sylvester's dishonesty.

On our de novo review we agree with these findings and conclude—like the commission—that they clearly establish the violation of DR 1–102(A)(3), DR 102(A)(4), and DR 9–102(A). In addition, Sylvester's conviction of a felony (second-degree theft) in an underlying criminal proceeding is conclusive evidence of his unfitness to practice law. *See* Iowa Code § 602.10122(1) (record of felony conviction is conclusive evidence sufficient for attorney suspension or revocation).

### V. *Discipline.*

We decide the appropriate discipline based on the facts in each case. *Committee on Professional Ethics & Conduct v. Shifley*, 390 N.W.2d 133, 135 (Iowa 1986) (en banc). In our de novo review we conclude only the most severe sanction is warranted. The record reveals Sylvester's actions in converting client and firm funds were calculated, flagrant, and ongoing. He casually flaunted his clients' and his firm's trust. He failed to aid the firm in its investigation of his wrongdoing, in violation of the court's sentencing order in an underlying criminal action. His conviction of a felony is conclusive evidence that the ultimate form of discipline must be imposed.

Consistent with our prior decisions, we conclude revocation is the only sanction commensurate with the uncontested extreme wrongdoing the evidence discloses. *See, e.g., Committee on Professional Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994) (revocation for conversion of client funds justified because "[t]he public, as well as our profession in its service to it, needs to know that disbarment is almost certain to follow a lawyer's conversion of a client's funds"); *Committee on Professional Ethics & Conduct v. Yates*, 420 N.W.2d 455, 458 (Iowa 1988) (repeated conversion of client funds justified revocation); *Committee on Professional Ethics & Conduct v. Piazza*, 405 N.W.2d 820, 824 (Iowa 1987) (revocation for conversion of client and partners' funds); *Committee on Professional Ethics & Conduct v. Fugate*, 394 N.W.2d 408, 410 (Iowa 1986) ("We will not countenance conversion of client funds by persons we license to practice law."); *Shifley*, 390 N.W.2d at 135 ("[W]e have an obligation to protect the public and the courts from theft and deceit.").

We revoke Bryan L. Sylvester's license to practice law in the courts of this state.

Costs are assessed to Sylvester pursuant to Iowa Supreme Court Rule 118.22.

**LICENSE REVOKED.**