IOWA SUPREME COURT BOARD
OF PROFESSIONAL ETHICS
& CONDUCT, Appellee,

v.

**Donald L. CARR II, Appellant.**

No. 98–1598.

Supreme Court of Iowa.

Jan. 21, 1999.

Nicholas V. Critelli, Jr., Des Moines, for appellant.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

CADY, Justice.

This is an attorney disciplinary proceeding. The claim involves a request by a lawyer for a bogus fee from a client, and the failure of the lawyer to subsequently account for the receipt of the money to his law firm. The grievance commission found the conduct constituted moral turpitude, as well as dishonesty, fraud, deceit, or misrepresentation in violation of various disciplinary rules. It recommended revocation of the license to practice law. On our review, we agree with the findings and the recommended sanction of the commission.

## I. Background Facts and Proceedings.

Donald L. Carr, II has been licensed to practice law in Iowa since 1979. He has no prior disciplinary record.

In 1993, Carr was employed by Sandi Wright and her minor daughter, Heather, to represent them in a sexual discrimination and harassment claim against the Mason City school district. Carr was a member of the Des Moines law firm of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Mallaney, Shindler & Scalise, P.C.

During the course of the representation, Carr and another lawyer from his firm negotiated a contract with NBC Productions, Inc. for the rights to the Wrights' story. Carr and his partner agreed not to charge a fee to the Wrights for their services in negotiating the contract. Instead, NBC agreed to pay the two lawyers a consulting fee. A program about the Wrights' story was subsequently produced and aired on NBC.

In September 1995, NBC sent Carr various royalty checks pursuant to the contract. The royalties totaled approximately $72,000, with the bulk of the money payable to Heather. Carr called Sandi and arranged to meet her at a restaurant in Story City to deliver the royalty checks. However, he also told her she would be required to pay a ten percent fee for his work in the matter. Carr told Sandi the fee would be $4700, which together with the consulting fee paid by

NBC totaled ten percent of the total royalties received. Carr told Sandi to bring the fee to their meeting in Story City.

Carr and Sandi met in Story City a short time later. Carr delivered the royalty checks to Sandi. Sandi gave Carr a check for $4500 and $200 in cash. Carr did not account for the money to his firm.

Following the trial of the sexual harassment claim in June 1996, the law firm acquired information about the money Sandi gave Carr in September 1995. A member of the firm confirmed the payment with Sandi, and talked to Carr. Carr responded the money was given to him to hold for Heather until after the trial. He denied he requested a fee from Sandi, but simply wanted to hold back some funds for Heather because he was concerned she would squander her money. Carr indicated he cashed the check given to him by Sandi and kept forty-seven hundred dollar bills in a safe box for Heather. Within a week or so of the time the law firm began its investigation, Carr called Heather and told her he had a surprise for her. He then drove to Mason City and gave her forty-seven hundred dollar bills. He told Heather he had been holding the money for her benefit.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against Carr alleging numerous violations of the Code of Professional Responsibility. At the hearing, Carr maintained his actions merely constituted a violation of the trust fund provisions of the code. The commission, however, found Carr's explanation was an afterthought to minimize the severity of his conduct. It found Carr violated DR 1–102(A)(3) by engaging in conduct involving moral turpitude and violated DR 1–102(A)(4) by engaging in conduct involving fraud, deceit, or misrepresentation. The commission recommended revocation of Carr's license to practice law.

## II. Burden of Proof and Standard of Review.

Allegations of lawyer misconduct must be proven by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma,* 533 N.W.2d 532, 535 (Iowa 1995). Our review of a recommendation by the grievance commission is de novo. Iowa Sup.Ct. R. 118.10. Our first task is to determine whether discipline is warranted. *Id.* If discipline is justified, we must then determine the appropriate sanction. *Id.*

On our de novo review we agree with the findings of the commission. Carr's claim that he was benevolently holding the money for Heather is utterly implausible. In truth, it was a desperate attempt to minimize the seriousness of his conduct. This is not a trust fund violation case involving an inattentive lawyer, but a case involving a dishonest lawyer. Carr was dishonest to his client and his firm, and this dishonesty permeated his defense. The credible evidence convincingly reveals Carr falsely represented to his client a fee was due. It also revealed he accepted this false fee, and failed to account for the receipt of the money to his law firm. He violated DR 1–102(A)(3) and (4).

## III. Discipline.

We decide the appropriate discipline based upon the circumstances of each case. *Committee on Prof'l Ethics & Conduct v. Shifley,* 390 N.W.2d 133, 135 (Iowa 1986). Nevertheless, we have previously indicated conversion of client funds by lawyers will not be tolerated. *Committee on Prof'l Ethics & Conduct v. Fugate,* 394 N.W.2d 408, 410 (Iowa 1986). We have also emphasized our obligation to protect the public from theft and deceit. *Shifley,* 390 N.W.2d at 135. The public, as well as the bar, needs to know disbarment will nearly always follow such wrongdoing. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester,* 548 N.W.2d 144, 147 (Iowa 1996).

Carr points out most disbarment cases involve repeated misappropriation or a pattern of violations. He also argues they typically involve admissions of misappropriation, so no uncertainty about the violation exists when sanctions are considered. While this may be true, it is not our standard. Instead, we consider both aggravating and mitigating circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct*

*v. Mattson,* 558 N.W.2d 193, 195 (Iowa 1997). We are guided by the "nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law." *Committee on Prof'l Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 21 (Iowa 1985).

Although the violation in this case was confined to a single episode, it involved several serious dishonest acts. This dishonesty began with the client, and was repeated with the firm. It was then followed by a sustained coverup once the wrongdoing began to surface. Furthermore, we will not permit the lack of an admission or underlying conviction of a crime in a case such as this to benefit a respondent. Although we do not punish Carr for failing to admit the most serious violations, his continued denial of misappropriation and dishonesty does not deter us in our determination of the sanction to result. We have previously found Carr violated our Code of Professional Responsibility by the requisite burden of proof.

Considering all of our guidelines, we conclude revocation is the appropriate sanction. The conduct engaged in by Carr shows he is unfit to continue to practice law. We revoke the license of Donald L. Carr, II to practice law.

Costs are assessed to Carr pursuant to Court Rule 118.22. Carr shall comply with the notification requirements of Court Rule 118.18.

**LICENSE REVOKED.**