**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Appellee,**

v.

**Wesley B. HUISINGA, Appellant.**

No. 01–1127.

Supreme Court of Iowa.

Feb. 27, 2002.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellant.

Norman G. Bastemeyer and David J. Grace, Des Moines, for appellee.

NEUMAN, Justice.

This disciplinary action stems from the acrimonious breakup of a Cedar Rapids law firm. One of the six withdrawing partners, in a misguided and unethical move, deposited a receivable intended for the firm into his personal checking account. Although the lawyer, respondent Wes Huisinga, seems to suggest his attempt at self-help should be excused under the circumstances, the real question is not whether our code of professional ethics has been violated but what sanction is appropriate for its breach.

The grievance commission recommended a thirty-day suspension of Huisinga's license. For the reasons that follow, we believe a public reprimand combined with obligatory community service achieves a better fit between the unique facts before us and our prior cases.

## I. Background.

Wes Huisinga was admitted to practice law in Iowa in 1981. Since 1982 his practice has centered on commercial litigation and bankruptcy. Upon appointment by the United States Attorney General in 1987, he served fulltime as the U.S. trustee in bankruptcy for a region that eventually spanned Iowa, Minnesota and South Dakota. His position and expertise in the field of bankruptcy involved him in regional administration and hiring of trustees as well as policy-making and education at the national level.

In 1994, with the change in presidential administration, Huisinga returned to private practice in Cedar Rapids. He joined the law firm of Simmons, Perrine, Albright & Ellwood, P.L.C. (hereinafter "Simmons Perrine"), where he became a member in

1998. His practice continued to focus on commercial law and bankruptcy. A large portion of his bankruptcy work involved "Chapter 7" cases in which he served as court-appointed or "panel" trustee. Financial success in this arena turned on efficient administration of a high volume of non-asset cases for which he received a flat fee of $60 apiece.

The record reveals that, in 1998, Huisinga handled over 500 Chapter 7 cases. He had the assistance of a skilled paralegal, Mary Klingler. Specialized computer equipment and software enabled them to file reports and perform direct banking functions in accordance with federal bankruptcy court regulations.

In the fall of 1998, Huisinga and five other members of the business section of Simmons Perrine decided to end their association with the firm. They gave thirty-days notice of their departure, and October 26 was eventually agreed upon as the official date for vacating their offices. It would unduly lengthen this opinion, and add little to our jurisprudence, to detail the personal and professional frustration, mistrust and unhappiness that led to—and surrounded—the firm's breakup. In a nutshell, the members' withdrawal was met with considerable hostility by those who remained at Simmons Perrine, both lawyers and staff.

Huisinga's paralegal, Klingler, responded particularly harshly to the breakup. From the day of the announced withdrawal she refused to assist him in any way. As she was the only staff member familiar with Huisinga's bankruptcy work, his practice was thrown into a state of chaos. Huisinga had the part-time assistance of another secretary who helped him as best she could but, among other obstacles, she was unable to access the bankruptcy software at Klingler's workstation during office hours. This necessitated substantial overtime work on her part, an expense the Simmons Perrine management made clear it would not pay.

A frustrated Huisinga moved his furniture and files to Shuttleworth & Ingersoll, P.L.C. (hereinafter "Shuttleworth"), his new firm, on October 19, roughly a week earlier than planned. Coincidentally, the Shuttleworth and Simmons Perrine firms occupy space in the same office building. Huisinga's secretary remained temporarily at Simmons Perrine and, for the next several days, Huisinga moved between the two offices trying to get his work done.

It was during this transition period that the events giving rise to this disciplinary proceeding occurred. Huisinga received from the bankruptcy court a check for $3180 covering trustee's fees for Chapter 7 cases closed in September. Under Huisinga's agreement with Simmons Perrine, fees earned during his association with the firm were to be deposited with the Simmons Perrine bookkeeper for allocation in accordance with the firm's compensation agreement. Instead, Huisinga deposited the check in his own personal checking account. It remained there until April 1999, and that is what brings him before this court.

Huisinga has offered several explanations for his conduct. In March 1999, when his former colleagues at Simmons Perrine inquired about the payment, Huisinga first denied receipt of trustee's fees for any work completed in September or October. Later, after he authorized a check payable from Shuttleworth to Simmons Perrine for the missing amount, his accompanying letter advised that the funds had been held at Shuttleworth pending an accounting and he had been unaware that a check had not been previously issued. When eventually confronted with his former colleagues' knowledge (gained from the bankruptcy court clerk) that the check,

received months earlier, had been deposited in his personal account, Huisinga admitted that his anger over the turmoil surrounding his last days at Simmons Perrine had prompted him to withhold the funds until he could calculate the extent of his damages. He asserted his intent to make that calculation part of the final fee allocation between the firms. Several of the lawyers at Simmons Perrine were highly skeptical.

## II. Complaint.

Huisinga self-reported the matters surrounding this controversy to the Board of Professional Ethics and Conduct (Board). The Board then filed a complaint charging him with conduct involving dishonesty and misrepresentation adversely reflecting on his fitness to practice law, in violation of DR 1–102(A)(4) and (6) of the Iowa Code of Professional Responsibility.[1] The matter proceeded to hearing before a panel of the grievance commission. Numerous lawyers and staff members from both firms shared their perspectives on the facts sketched above. In his own testimony, Huisinga admitted that he had been less than candid with his former colleagues at Simmons Perrine and, in retrospect, that it was improper for him to have deposited the $3180 check in his personal account.

The grievance commission, summing up its reasons for recommending a thirty-day suspension, described the case this way:

> To the extent that it might be considered a mitigating factor, the Respondent was the subject of an extremely unpleasant situation at the time of the transgression. He was not provided essential staffing requirements to support the work his practice demanded. Nonetheless, as an attorney, and as an attorney holding the special position of trust within the realm of the United States Bankruptcy Court, the Respondent had a duty to refrain from resorting to self help even though he perceived that he was being wronged. Respondent admits that he exercised bad judgment, but his conduct goes beyond simply bad judgment. Respondent converted into his personal account funds that did not belong to him.

## III. Scope of Review.

 Our review on appeal from proceedings before the grievance commission is de novo. Iowa Sup.Ct. R. 118.11; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 129 (Iowa 1999); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester,* 548 N.W.2d 144, 146 (Iowa 1996). The burden rests on the Board to prove the alleged misconduct by a convincing preponderance of the evidence. *Carr,* 588 N.W.2d at 129. We accord respectful consideration to the commission's findings and recommended sanction, but we are not bound by its decision. *Comm. on Prof'l Ethics & Conduct v. McClintock,* 442 N.W.2d 607, 607 (Iowa 1989).

## IV. Applicable Law.

Our prior decisions make plain that a lawyer's failure to account for the receipt of fees or other funds due to a law firm constitutes a violation of DR 1–102. *Iowa*

---

1. The Board subsequently amended its complaint to add identical counts concerning two additional checks received by Huisinga after November 1998. The record reveals that both checks were deposited in the Shuttleworth general trust account and included in the final settlement between the firms. The commission found, and we agree, that the evidence is insufficient to show any deceit or misrepresentation by Huisinga with respect to these checks. We therefore give the additional counts of the complaint no further attention.

*Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz,* 595 N.W.2d 794, 796 (Iowa 1999); *Carr,* 588 N.W.2d at 129; *Sylvester,* 548 N.W.2d at 147; *McClintock,* 442 N.W.2d at 607; *Comm. on Prof'l Ethics & Conduct v. Piazza,* 405 N.W.2d 820, 822 (Iowa 1987); *Comm. on Prof'l Ethics & Conduct v. Hanson,* 244 N.W.2d 822, 824 (Iowa 1976). These cases rest on the premise that even though a lawyer's dishonest conduct does not involve an attorney-client relationship, our code of ethics nevertheless applies. *McClintock,* 442 N.W.2d at 608.

An attorney cannot resort to self-help to rectify what may be perceived to be an inequity in the division of law partnership earnings. Most law partnerships are founded upon a total trust and confidence among the partners. A breach of this exceedingly close relationship merits disciplinary action.

*Id.*

■■ The scope of any disciplinary action must be tailored to the particular facts and circumstances of the case. *Schatz,* 595 N.W.2d at 796. The guiding principles for imposing a sanction include "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole and the respondent's fitness to continue in the practice of law." *Sylvester,* 548 N.W.2d at 146 (quoting *Comm. on Prof'l Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 21 (Iowa 1985)).

## V. Sanction.

■ The controversy before us centers on the sanction Huisinga deserves for his dishonest conduct toward his partners. In his testimony before the grievance commission, Huisinga acknowledged the impropriety of depositing a check for trustee's fees in his personal account. Yet he continued to rationalize his self-help remedy in terms of "leverage" crucial to the "day of reckoning" with his former firm. Like the grievance commission, we think it important to recognize Huisinga's supposed dilemma for what it really is. Had he directly confronted Simmons Perrine about the perceived inequity of his situation, this would be no more than a contract dispute. Instead the record reveals Huisinga's attempt to conceal wrongdoing until caught in the act. No amount of after-the-fact rationalizing can satisfactorily explain this fundamental breach of honesty and professional ethics.

A review of our prior decisions involving attorneys accused of similar misconduct yields two public reprimands and five license revocations. In the cases resolved by reprimand, the records reveal full disclosure and restitution by the offending attorney, agreement by the affected firm with the settlement reached and no other aggravating circumstances. *See Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Fredericksen,* No. 99–1181 (Iowa September 3, 1999) (Order of Public Reprimand); *McClintock,* 442 N.W.2d at 608. *But see State ex rel. Nebraska State Bar Ass'n v. Frederiksen,* 262 Neb. 562, 635 N.W.2d 427, 430–31 (2001) (companion disciplinary action against lawyer licensed in both Iowa and Nebraska resulted in three year suspension of Nebraska license).

The cases warranting revocation reveal much more egregious surrounding circumstances such as criminal conduct, drug dealing or conversion of client funds. *See Schatz,* 595 N.W.2d at 795–96 (embezzlement of $140,000 in firm funds, income tax evasion and two felony convictions warrants revocation); *Carr,* 588 N.W.2d at 129 (lawyer defrauded client as well as firm by collecting, and failing to account for, "false" fee); *Sylvester,* 548 N.W.2d at 147 (conviction of felony for conversion of firm funds and forgery); *Piazza,* 405 N.W.2d at

823–24 (misappropriation of client as well as law partnership funds; prior record of suspensions); *Hanson,* 244 N.W.2d at 824 (drug dealing combined with conversion of firm funds warrants revocation).

We think the case before us falls somewhere between these two extremes. Huisinga has previously enjoyed an unblemished record of service to his profession and his community. Several members of the bench and bar testified not only to his reputation for honesty and integrity but to the unusually acrimonious circumstances surrounding his departure from Simmons Perrine. On the one hand, Huisinga's regrettable reaction to these adverse conditions reveals a betrayal of the fundamental trust by which we, as lawyers, are bound and upon which we must rely in our professional associations with one another. Yet the incident at issue appears isolated and out of character for a lawyer whose fiduciary responsibility and expertise are widely recognized. This latter fact makes even a brief suspension of his license problematic. Beyond the usual personal upheaval wrought by any suspension, imposing such a sanction here would greatly inconvenience the bankruptcy court and public otherwise capably served by Huisinga.

We conclude that a reprimand combined with a public service requirement will satisfactorily address the objectives of this disciplinary proceeding. Huisinga has settled his financial differences with Simmons Perrine. We trust that imposing a public service obligation will renew Huisinga's fidelity to professional ethics, encourage others to deal more forthrightly with their colleagues, and repair the public trust inevitably damaged by cases such as this.

We therefore order that within thirty days of this ruling, Huisinga shall submit to this court a plan for completion of forty hours of public service to his community.

It is not our intent that such service duplicate or replace community activities in which Huisinga is already engaged. Rather, this service shall be performed independently to recognize and redress the serious breach of trust this record reveals.

Assuming approval of the plan, Huisinga shall fulfill its requirements within one year and thereafter immediately report its completion to this court. Failure to abide this requirement may subject the respondent to further action by this court, including but not limited to citation for contempt. We trust that no further proceedings will be necessary.

The costs of this action are assessed against the respondent in accordance with Iowa Supreme Court Rule 118.22.

**ATTORNEY REPRIMANDED.**

All justices concur except CARTER and STREIT, JJ., who take no part.