# IN THE SUPREME COURT OF IOWA

No. 12–1567

Filed January 18, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

　　Complainant,

vs.

**PATRICK ALEX HENRICHSEN,**

　　Respondent.

---

On review from the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa filed a report recommending that an attorney receive a public reprimand for a violation of the Iowa Rules of Professional Conduct. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

David L. Brown and Jay D. Grimes of Hansen, McClintock & Riley, Des Moines, for respondent.

**APPEL, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, Patrick Alex Henrichsen, violated Iowa Rule of Professional Conduct 32:8.4(c) by depositing earned fees into his personal bank account instead of the firm's account as directed by an agreement of the firm's shareholders. The Grievance Commission of the Supreme Court of Iowa filed a report recommending a public reprimand. Pursuant to our court rules, we are required to review the commission's report. *See* Iowa Ct. R. 35.11(1). Upon our de novo review, we suspend Henrichsen's license to practice law indefinitely with no possibility of reinstatement for a period of three months.

## I. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 677 (Iowa 2010). The Board must prove an attorney's ethical misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 763 (Iowa 2010). We will respectfully consider, but are not bound by, the commission's findings of fact, conclusions of law, and recommended sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 101 (Iowa 2010). Once the Board has proven an attorney's misconduct, we may impose a "lesser or greater sanction than the discipline recommended by the grievance commission." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004) (citation and internal quotation marks omitted).

## II. Factual and Procedural Background.

Henrichsen has been licensed to practice law in Iowa since 2000. Henrichsen practices primarily in the areas of real estate, estate

planning, and taxation, although he also helps new small businesses form business entities. Outside of his practice, Henrichsen has volunteered with Habitat for Humanity, participates in charitable activities organized by his church, teaches Sunday school, and coaches soccer. Although Henrichsen is now a solo practitioner, we are concerned with his conduct at his former law firm.

In 2008, he became the fourth shareholder in a law firm organized as a professional corporation in West Des Moines. Clients would frequently address checks for legal services to a particular attorney at the firm. Pursuant to an agreement of the shareholders, each attorney was required to give all earned fees to the firm's bookkeeper for deposit into the firm's general account. The four shareholders drew equal salaries from the firm every two weeks. At the end of each fiscal quarter, the remaining funds in the general operating account were distributed to the members as deferred earnings based upon a formula that took into account overhead costs and the different quarterly earnings of each shareholder. Accordingly, each member would receive a share of the quarterly distribution proportionate to the revenue for which he was responsible.

In fall 2010, the bookkeeper began to notice that Henrichsen had not given her any checks from the Iowa Finance Authority for some time. These checks, which were commissions for title guarantee work, usually came each month. At some point thereafter, the other shareholders at the firm asked the bookkeeper to investigate Henrichsen's billing records and receipts. The bookkeeper reported that there may have been clients from which the firm never received fees. The other shareholders confronted Henrichsen, who admitted to depositing the checks into his personal account. The other shareholders and Henrichsen estimated

that Henrichsen failed to deposit $10,000 into the firm's general account. The record confirms that Henrichsen withheld at least this amount between April 2008 and September 2010 in matters related to real estate, estate planning, and taxation. Henrichsen and the other shareholders mutually agreed that it would be best if Henrichsen left the firm. Henrichsen and the firm settled their financial matters internally during the separation process. Henrichsen then started his own practice.

The firm also investigated whether Henrichsen's actions affected any ongoing client matters. An audit performed by an outside accountant did not reveal any irregularities in its client trust accounts. Further, they confirmed that Henrichsen's actions did not affect regularly billed clients or cause any client to be billed more than once for the same legal work. Thus, the firm verified that Henrichsen's actions only pertained to accounts receivable and did not affect any of its clients.

In October 2010, Henrichsen wrote a letter to the Board reporting his actions. In his letter, Henrichsen stated he did not know why he deposited the fees into his personal account. At the hearing on this matter in June 2012 before the commission, Henrichsen testified that he and his counselor believe he has control issues. Henrichsen also testified that he did not spend the funds. Following the hearing, the commission recommended that Henrichsen receive a public reprimand.

### III. Ethical Violations.

Iowa Rule of Professional Conduct 32:8.4(c) prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). It is virtually identical to its predecessor, DR 1–102(A)(4). *See* Iowa Code of Prof'l Responsibility for Lawyers DR 1–102(A)(4). We held on numerous occasions that a lawyer violated DR 1–102(A)(4) by depositing receivables

intended for the firm into a personal bank account. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson,* 750 N.W.2d 104, 108–09 (Iowa 2008); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin,* 679 N.W.2d 641, 644 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Huisinga,* 642 N.W.2d 283, 286–87 (Iowa 2002); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz,* 595 N.W.2d 794, 796 (Iowa 1999); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 129 (Iowa 1999); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester,* 548 N.W.2d 144, 147 (Iowa 1996); *Comm. on Prof'l Ethics & Conduct v. Piazza,* 405 N.W.2d 820, 822 (Iowa 1987); *Comm. on Prof'l Ethics & Conduct v. Hanson,* 244 N.W.2d 822, 824 (Iowa 1976).

We see no reason to interpret rule 32:8.4(c) differently than its predecessor. Based on our examination of the record, we conclude Henrichsen withheld receivables from the partnership and deposited them into his personal bank account in violation of the shareholder agreement. Thus, he violated rule 32:8.4(c).

### IV. Sanction.

In fashioning an appropriate sanction in attorney discipline proceedings, we respectfully consider the commission's recommendation, but ultimately "the matter of sanction is solely within the authority of this court." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison,* 727 N.W.2d 115, 119 (Iowa 2007) (citation and internal quotation marks omitted); *see also* Iowa Ct. R. 35.11(1). Although the appropriate sanction is based on the particular circumstances of each case, *Schatz,* 595 N.W.2d at 796, we strive to maintain "some degree of consistency" in our sanctions, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clauss,* 711 N.W.2d 1, 4 (Iowa 2006). Thus, we may review our prior decisions involving lawyers who committed similar ethical misconduct. *See, e.g.,*

*Huisinga*, 642 N.W.2d at 287–88. We also consider "the nature of the violations," weigh any aggravating and mitigating circumstances, and take into account "the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, [and] maintenance of the bar as a whole." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008).

We have warned that an attorney who converts funds due his law firm may be subject to severe sanctions. *Schatz*, 595 N.W.2d at 796. A review of our prior cases reveals that we have on a number of occasions revoked the licenses of attorneys who failed to deposit earned fees into their firms' general operating accounts. *See, e.g., Irwin*, 679 N.W.2d at 644–45; *Schatz*, 595 N.W.2d at 796; *Carr*, 588 N.W.2d at 130; *Sylvester*, 548 N.W.2d at 147; *Piazza*, 405 N.W.2d at 824; *Hanson*, 244 N.W.2d at 824. We have done so on the belief that honesty is paramount in the legal profession. *See Irwin*, 679 N.W.2d at 644; *Carr*, 588 N.W.2d at 130; *see also Comm. on Prof'l Ethics & Conduct v. McClintock*, 442 N.W.2d 607, 608 (Iowa 1989) ("Most law partnerships are founded upon a total trust and confidence among the partners."). Review of these cases, however, reveals that the attorney's failure to remit earned fees to his law firm in these cases was often accompanied by other serious unethical conduct, such as conversion of client funds, felony convictions, or attempted drug dealing. *See Irwin*, 679 N.W.2d at 642–45 (attorney who believed he could perform legal services on the side as long as he met his obligations to his firm converted over $99,000 in fees due to his firm and failed to deposit unearned fees into a client trust account); *Schatz*, 595 N.W.2d at 795–96 (attorney converted $140,000 in legal fees over a period of many years and was subsequently convicted of two felonies involving theft and

deceit); *Carr*, 588 N.W.2d at 129–30 (attorney defrauded client and firm by collecting and failing to account for a "bogus" fee of $4700); *Sylvester*, 548 N.W.2d at 145, 147 (attorney engaged in "calculated, flagrant, and ongoing" conversion of client and firm funds, altered the payee's name on a check, and pled guilty to felony theft); *Piazza*, 405 N.W.2d at 823–24 (attorney attempted to conceal his conversion of $3840 of the partnership's funds by writing checks to himself from the firm's accounts, failed to deposit over $8900 in earned fees into the firm's account, converted client funds to his own use, misrepresented the status of a client's case to that client, and failed to respond to the disciplinary committee's inquiry); *Hanson*, 244 N.W.2d at 823–24 (attorney converted client retainer instead of depositing it into firm account, possessed marijuana, and attempted to engage in illegal drug trafficking).

We have also on at least three occasions imposed sanctions less than revocation where an attorney failed to deposit firm funds in the appropriate account. In *McClintock*, we issued a public reprimand to an attorney with no prior disciplinary record who retained nearly $7000 of receivables over nine years for his own use without informing his law partners. 442 N.W.2d at 608. The fees had been paid by checks made out to the particular attorney, instead of to the firm, but were nonetheless required to be deposited in the partnership's bank account as per the partners' oral agreement. *Id.* When one of the other partners learned of the attorney's practice and confronted him, the attorney admitted to withholding the fees for personal use, agreed to account for the fees, and make full restitution to his partners, and self-reported his actions to the committee on professional ethics and conduct. *Id.*

Similarly, in *Huisinga*, we imposed a public reprimand and community service requirement on an attorney who self-reported his failure to deposit a $3180 check into his firm's general account as directed by the firm's compensation agreement. *Huisinga*, 642 N.W.2d at 285, 288. The attorney, who handled numerous bankruptcy cases as a court-appointed trustee and was in the middle of an acrimonious departure from his firm, admitted he planned to withhold the funds until he could calculate the amount his firm owed him. *Id.* at 285–86. In deciding not to impose a harsher sanction, we took into account his previously unblemished record as an attorney and the isolated nature of this incident. *Id.* at 288. We also took into account the inconvenience the attorney's suspension would cause to the bankruptcy court and the attorney's other clients. *Id.* Finally, we noted the attorney had settled his financial differences with his firm. *Id.*

Finally, in *Isaacson* we suspended for six months the license of an attorney who on several occasions collected fees from clients and deposited them into his personal account instead of the firm account. 750 N.W.2d at 108, 110. The partnership's agreement required the attorney to deposit earned fees into the partnership's general account to ensure each partner covered his share of the overhead. *Id.* at 108. As a result of the attorney's actions, the firm billed several clients multiple times. *Id.* Additionally, the attorney repeatedly failed to respond to the partnership's requests for the missing funds, disputed the amount he owed the partnership, failed to deposit client funds in a trust account, failed to promptly deliver funds to a client, and failed to maintain proper books and records. *Id.* at 108–09. We did not revoke the attorney's license because the Board had failed to prove the attorney converted the client's funds, but also noted "the deceit he practiced in the relationship

with his law partner also demand[ed] a significant suspension." *Id.* at 109–10.

Turning to Henrichsen, we conclude a suspension is in order. The record reveals that Henrichsen did not defraud any of the firm's clients, convert unearned client fees, or fail to deliver funds owed to a client. Nonetheless, he, on many occasions over an extended period of time, withheld funds from his law firm without any colorable claim of entitlement other than the fact that the client checks were made out to him. His withholding of funds was not a one-time incident, as in *Huisinga,* but represented a pattern of serious misconduct. Henrichsen states his failure to deposit the funds in the firm account represented a "control issue," but this conclusory defense does not excuse the serious misconduct over an extended period of time.

There are some mitigating factors. First, an attorney's own recognition of his ethical violations is a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson,* 732 N.W.2d 865, 868–69 (Iowa 2007). Henrichsen self-reported his actions to the Board and cooperated with his firm to settle the monetary difference during his separation. It is not entirely clear, however, that the self-reporting was not motivated in part by a desire to avoid a report by his law partners. Second, Henrichsen does not have a prior history of attorney discipline. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kress,* 747 N.W.2d 530, 541 (Iowa 2008). Finally, although they do not excuse his conduct, we may consider Henrichsen's personal issues as a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel,* 809 N.W.2d 96, 110 (Iowa 2012). He testified that he has control issues which have pervaded multiple aspects of his life, from his marriage to his work life and that he is working with a counselor to address them.

In cases like these, the determination of the appropriate sanction is a matter of line drawing. In light of the seriousness of Henrichsen's misconduct, we suspend Henrichsen's license to practice law in this state for a period of three months.

**V. Conclusion.**

For the reasons expressed above, we suspend Henrichsen's license to practice law in this state indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.13(3). Prior to any reinstatement, Henrichsen must establish that he has not practiced law during the period of his suspension and that he has complied in all ways with the requirements of rule 35.14 and the notification requirements of rule 35.23. Costs of this action are taxed to Henrichsen pursuant to rule 35.27.

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who dissents.

#12–1567, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Henrichsen*

**WIGGINS, Justice (dissenting).**

I respectfully dissent for the reasons stated in my dissent in *Iowa Supreme Court Attorney Disciplinary Board v. Bieber,* 824 N.W.2d 514, 530 (Iowa 2012) (Wiggins, J., dissenting). We have an obligation, as the regulatory body for our profession, to protect the public from dishonest attorneys. Dishonesty is a trait that disqualifies a person from the practice of law. An attorney who converts fees from his partners, when a dispute over the fees does not exist, is per se unfit to practice law. Thus, I have no hesitation in revoking Henrichsen's license to practice law.